**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DONNA CAMPBELL**                                                                           **PLAINTIFF**


**v.**                                        **CASE NO. 4:06-CV-00630 GTE**


**JOHN E. POTTER, Postmaster General,
United States Postal Service**                                                               **DEFENDANT**


## ORDER ON MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant's Motion for Summary Judgment.

**I.    Background**

Plaintiff is an African-American female, and has had prior EEO activity. Plaintiff worked intermittently for Defendant United States Postal Service ("USPS") in various jobs since 1977. She came back to work at the USPS in 1988 as a Bar Code Sorter and worked continuously for USPS since then. In 1992, Plaintiff became a Central Forwarding Service (CFS) clerk.

Pursuant to the American Postal Workers Union contract, the CFS clerks key on two hour shifts for a total of six hours a day. During non-keying time, the clerks label change of addresses and process 3579's (magazines). The functional requirements of a CFS clerk job include: heavy lifting, up to 70 pounds, infrequent; moderate lifting 15-44 pounds; light lifting under 15 pounds; heavy carrying, 45 pounds and over; moderate carrying 15-44 pounds; light carrying under 15 pounds; pushing; repeated bending (4 plus hours); reaching with light lifting less than 5 pounds above shoulder level (8+ hours); use of fingers to simple/power grasp and fine manipulate; and

1

use of upper extremities, hands/fingers for data entry/keying operations and fine manipulation (8+ hours) approximately 7000 keystrokes.

An employee who is injured on the job is referred to as a limited duty employee. The USPS has an obligation to provide limited duty employees work and guarantee their wages. It does not matter if the work is funded or not or productive or not. The USPS will even create jobs for a limited duty employee. An employee who is not injured on the job or whose injury has not been adjudicated as on the job may request light duty. The USPS has an obligation to look to see if work can be provided within their restrictions that is productive and within the needs of the Postal Service. The positions must be vacant, funded positions.

In 1995, Plaintiff had an accepted on-the-job injury, tenosynovitis of both hands. The USPS gave the plaintiff limited duty work in the Collections office from 1997 to 2001. In 2001, Plaintiff's physician found that her EMG and nerve conduction studies were normal and that Plaintiff could return to work on regular duty. Plaintiff testified that the Office of Workers' Compensation Programs ("OWCP") closed her claim in 2001. She also testified that at the time in question, she did not have an accepted OWCP claim. However, she asserts that her claim was reopened.

On October 9, 2001, Plaintiff was instructed to return to her pre-injury job. She requested light duty because she could not key for two straight hours. Plaintiff submitted light duty requests up until April 2, 2002, and the USPS granted them. The physician's restrictions for Plaintiff were: carrying 10 pounds or less; lifting 10 pounds or less; grasping and simple grasping two hours at a time for 8 hours; fine manipulation two hours at a time for 8 hours; and keypunch/data entry one hour at a time for four hours. The duties in Plaintiff's light duty

assignment were: labeling change of addresses; 3579's (magazines); flats, prepared bags, process no records, key one hour MT (when machine is available), copy, key change of address one hour and label change of address one hour.  The Plaintiff could key one hour at a time for a total of four hours a day.  Doug Chipps (Caucasian), the Postmaster of Little Rock, approved all light duty requests.

In a letter dated February 4, 2002, Dr. J.P. Jackson, Plaintiff's physician, stated that he did not know if there was any real hope for Plaintiff being able to return to full work capacity.  In a letter dated March 5, 2002, Dr. J. Zachary Mason with Neurological Surgery Associates had released Plaintiff, but stated that she had sensory deficits in her right upper extremity due to large C 6-7 disc herniation.  Plaintiff was offered surgical intervention but refused.  A form submitted by Plaintiff's physician showing her restrictions on April 16, 2002, stated that her prognosis was unclear.

Diane Sims (African-American female), was the supervisor of the CFS.  Postmaster Chipps told Ms. Sims that he needed a prognosis for Plaintiff.  The USPS sent Plaintiff for a fitness-for-duty examination in May 2002.  Dr. Jimmerson marked on the form that Plaintiff was high risk: "Examinee is not medically qualified to perform the essential functions of the position.  Accommodations will not reduce medical risk or restriction."  In the section entitled "Suggested Accommodations," Dr. Jimmerson wrote, "None - Because patient continues to have chronic pain of unknown etiology i.e. negative EMG studies and evaluation by neurology.  She will not be able to perform essential functions of job."  After conferring with USPS Department of Labor, Diane Sims put Plaintiff on administrative leave.  Plaintiff was on paid administrative leave from July 9, 2002, through July 25, 2002.

Plaintiff was sent notice that the Arkansas District Reasonable Accommodation Committee ("DRAC") would consider her case on July 12, 2002. Plaintiff was invited to attend and participate in the discussion. She was told to be prepared to discuss her medical condition, limitations, and any reasonable accommodation she believed was appropriate. The DRAC consisted of Carolyn Sims (African-American), Deborah Williams (Caucasian), Herman Ellis (African-American), Debra Mills (Caucasian), and Carol Chappell (Caucasian). In a letter dated July 15, 2002, the DRAC determined that Plaintiff was "medically unsuitable for the position of CFS Clerk at the Little Rock South Side Post Office" and that "accommodation is not possible." The DRAC recommended that Plaintiff apply for disability retirement.

Plaintiff was informed that she would need to request annual leave, sick leave, or leave without pay while awaiting a determination on her application for disability retirement. Plaintiff did not apply for disability retirement, and was issued a Notice of Administrative Separation on September 26, 2002. Plaintiff filed a union grievance, and the Arbitrator sustained her grievance. Plaintiff filed an EEO Complaint 4G-720-0176-02 ("the first EEO Complaint"), dated October 7, 2002, which alleges discrimination based upon race, color, national origin, sex, age, and disability, and alleges retaliation.

Pursuant to the Arbitrator's decision, Plaintiff went before the DRAC a second time. The DRAC found that Plaintiff was medically unsuitable    In a letter dated November 6, 2003, the DRAC determined that Plaintiff was "medically unsuitable for the position of CFS Clerk" and that "the severity of [her] restrictions [was] not compatible with any vacant and funded position within the Little Rock Post Office or Little Rock Processing and Distribution Center." The DRAC recommended that Plaintiff apply for disability retirement. When Plaintiff failed to apply

for retirement, she was issued a second Notice of Separation on January 6, 2004, for medical inability to meet the essential functions of the job.

On January 12, 2004, Plaintiff filed EEO Complaint number 4G-720-0023-04 ("the second EEO Complaint") alleging that Defendant discriminated against her on the basis of race, color, sex, disability, and that Defendant retaliated against her. Specifically, she alleged that Defendant failed to reasonably accommodate her with a permanent light duty position, and that she was administratively separated on January 6, 2004. However, on June 27, 2007, the Court granted Defendant's Motion for Partial Dismissal limiting the issues in the lawsuit to those raised and exhausted in Plaintiff's first EEO Complaint, 4G-720-0176-02. Therefore, the second DRAC's conclusion and the January 6, 2004 Notice of Administrative Separation that are the subject of Plaintiff's second EEO Complaint are not a part of this lawsuit.

Plaintiff was administratively separated from the USPS effective March 3, 2006. She never asked Diane Sims for an accommodation that would allow her to perform the essential functions of the CFS clerk position. She only requested light duty.

Plaintiff has listed Cecil Thomas Cannon, Lorie Simmons, and Kathy Diane Pounds, all Caucasian employees, as similarly situated individuals not in her protected class who were treated differently. Mr. Cannon was paralyzed in a car wreck while he was on the job, and the USPS has given him a permanent limited duty position. Ms. Simmons had an on-the-job injury that was accepted as an OWC claim, and the USPS gave her limited duty work.

On June 2, 2006, Plaintiff's filed Complaint in this Court alleging race, sex, and disability discrimination, as well as retaliation. It appears that Plaintiff has abandoned her claims of sex discrimination, retaliation, and her claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3), as

she has completely failed to address Defendant's arguments that summary judgment is appropriate as to these claims. Therefore, those claims are dismissed and only her claims of race and disability discrimination will be considered.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

### III.     Motion for Summary Judgment

In reviewing Plaintiff's discrimination claim, the Court must bear in mind that summary judgment is disfavored in employment discrimination cases, as such cases are "inherently fact-based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005).  Nonetheless, "summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case." *Id.*

> A plaintiff may survive the defendant's motion for summary judgment in one of two ways.  The first is by proof of "direct evidence" of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient

>to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext.

*Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (internal citations omitted)

Because Plaintiff has not submitted "direct evidence" of discrimination, she must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas*[1] paradigm. *See Griffith*, 387 F.3d at 736-37.

In an employment discrimination case, the plaintiff must initially present a prima facie case to survive a motion for summary judgment, which raises a rebuttable presumption of discrimination. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134-35 (8th Cir. 1999). The employer must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1135. If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual. *Id.*

---

[1] The Eighth Circuit has ruled that while *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed.2d 84 (2003), is relevant in the context of mixed-motive jury instructions, "*Desert Palace* had no impact on prior Eighth Circuit summary judgment decisions," and therefore, the *McDonnell Douglas* framework remains the proper mode of analysis for summary judgment cases. *See Simpson*, 425 F.3d at 542 n.4.

### A.     Race Discrimination

Plaintiff asserts a claim for race discrimination based on a theory of disparate treatment. "To establish a disparate treatment claim, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his or her duties; (3) he or she suffered an adverse employment action; and (4) 'circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently.'" *Gilooly v. Missouri Dept. of Health and Senior Servs.*, 421 F.3d 734, 738-39 (8th Cir. 2005).

Defendant concedes that Plaintiff is a member of a protected class. However, Defendant contends that Plaintiff cannot establish that similarly situated employees not in her protected class were treated differently or that she suffered an adverse employment action. Plaintiff has listed Cecil Thomas Cannon, Lorie Simmons, and Kathy Diane Pounds, all Caucasian employees, as similarly situated individuals not in her protected class who were treated differently.

As Plaintiff admits, however, Mr. Cannon was paralyzed in a car wreck while he was on the job, and the USPS has given him a permanent limited duty position. Plaintiff also admits that Ms. Simmons had an on-the-job injury that was accepted as an OWC claim, and the USPS gave her limited duty work. Defendant asserts that Ms. Pounds, who held the same job that Plaintiff did, did not have an accepted on-the-job injury, but, unlike Plaintiff, she had no keying restrictions, which Plaintiff testified was eighty percent of the job. Ms. Pounds had a weight restriction of 10 pounds with her left arm and could not do the dispatch and lifting for that and the prepping of the mail due to her inability to lift the large tubs of mail, but she could perform

the remainder of her job duties. Furthermore, Defendant states that USPS gave Ms. Pounds light duty for six to seven months, just as they gave Plaintiff light duty for seven months. Plaintiff does not directly address Defendant's allegations concerning Ms. Pounds.

Additionally, in her response to Defendant's motion, Plaintiff names Lashanda Jackson, an African-American female, as a similarly situated employee. Plaintiff states that she testified that Ms. Jackson was accommodated "because she could key because she was diabetic and she was 27 or 28." However, even if Ms. Jackson as treated more favorably than Plaintiff, Ms. Jackson was an employee who was a member of Plaintiff's protected group, and therefore, does not establish Plaintiff's prima facie case.

As discussed above, Plaintiff admits that the USPS has an obligation to provide limited duty work and guarantee the wages of an employee who is injured on the job, or a limited duty employee, regardless of whether the work is funded or productive, but is only obligated to look to see if work can be provided to employees not injured on the job or whose injury has not been adjudicated, and that the positions must be vacant and funded. Clearly, Plaintiff has failed to establish that similarly situated employees not in her protected class were treated differently, and Plaintiff has failed to establish this prong of her prima facie case.

Defendant also asserts that there is no adverse employment action involved in the first EEO Complaint because, while Plaintiff was given a Notice of Administrative Separation on September 26, 2002, she was not separated from employment with the USPS until 2003. Furthermore, she filed a grievance, went through arbitration, and was awarded and received back pay, and therefore, she suffered no loss for the time period in question. "Adverse employment actions must have a 'materially adverse impact' in the plaintiff's terms or conditions of

10

employment under Title VII." *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001) (holding that because the work policies complained of were never put into practice against her, plaintiff did not suffer an adverse employment action). Plaintiff does not clearly set forth any opposition to Defendant's assertion. Summary judgment is appropriate on Plaintiff's disparate treatment claim. Furthermore, even if the Court were to assume that Plaintiff has established a prima facie case, under the *McDonnell Douglas* standard, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff has failed to set forth any evidence that the reason was pretextual.

   **B.   Disability Discrimination**

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a). "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment." 29 U.S.C. § 794(d).

To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must prove that (1) she was an individual with a disability; (2) she was "otherwise qualified"; (3) she worked for a "program or activity" that received federal financial assistance; and (4) she was adversely treated solely because of her handicap. *Demming v. Housing and*

*Redevelopment Auth., of Duluth, Minn.*, 66 F.3d 950, 954 (8th Cir. 1995). An individual with a disability is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B)). In its ADA analysis,[2] the Eighth Circuit reads subsection (i) in conjunction with subsection (iii) concluding that a person is considered disabled if that person is "regarded as having" an impairment that "substantially limits" a "major life activit[y]." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995).

"The limiting adjectives 'substantially' and 'major' indicate that the perceived 'impairment must be a significant one.'" *Id*. "A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment." *Id*. (citing 29 C.F.R. § 1630.2( *l* )(3)). "The focus is on the impairment's effect upon the attitudes of others." *Id.*

Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i). Sitting, standing, lifting, and reaching are also considered major life activities. *Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 616 (8th Cir. 1997). Working is a major life activity which, if substantially limited or regarded as substantially limited by an impairment, would qualify a person as disabled within the meaning of the ADA and the Rehabilitation Act. *Wooten*, 58 F.3d at 385-86 (citing 29 C.F.R. 1630.2(i)). "However, 'working' does not mean

---

[2]As stated above, the Rehabilitation Act and the ADA analyze disability in the same way. *See Heintzelman v. Runyon*, 120 F.3d 143, 145 n.4 (8th Cir. 1997) (citing cases).

working at a particular job of that person's choice" *Id*. at 386.  "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Id*. "An impairment is a disability only if it significantly restricts a person's ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable skills."  *Helfter*, 115 F.3d at 617.

Defendant argues that Plaintiff cannot prove that she is an individual with a disability within the meaning of the Rehabilitation Act.  Plaintiff states that she was limited in the major life activities of lifting, pushing, pulling, and data entry due to chronic pain.  However, she testified that she asked two Postmasters if they had any work for her, and she has applied for jobs outside of the USPS since she was separated from employment.  Also, Plaintiff stated in her responses to USPS's interrogatories that she had worked for one hour as a substitute teacher at Boone Park Elementary School, North Little Rock School District and had applied for 10 other jobs.  Furthermore, in her affidavit given during the EEO investigation of her administrative complaint, Plaintiff responded as follows to this question:

> 4 A.  Does your disability substantially limit your ability to perform a major life activity (e.g. caring for self, walking, seeing, hearing, etc.)?  (Please explain and provide documentation regarding your limitations).
> No, I still care for my famil[y] and myself.  I just do not enjoy life any longer.

Defendant also argues that Plaintiff cannot prove that she is a qualified individual with a disability within the meaning of the Rehabilitation Act.  The term qualified individual with a disability means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such person holds." 42 U.S.C. § 12111(8); 29 C.F.R. § 1614.203(a)(6).  Defendant states that Plaintiff

testified that 80% of the CFS clerk position was data entry and keying. While CFS clerks key in two-hour shifts, for a total of six hours in an eight hour work day, Plaintiff could only key in one-hour shifts for a total of four hours. Additionally, Plaintiff could not perform other function requirements of the CFS clerk position, such as heavy lifting (up to 70 pounds), moderate lifting (15 to 44 pounds), heavy carrying (45 pounds and over), and moderate carrying (15 to 44 pounds). Furthermore, Plaintiff's supervisor, Diane Sims, stated that Plaintiff was not productive, and estimated that Plaintiff could perform only about five percent of the job duties of the position. Ms. Sims also testified that Plaintiff never asked for an accommodation that would allow her to perform the essential functions of the CFS clerk position. Finally, Ms. Sims testified that a clerk who can only key for one hour botches up the rotation and causes a keying machine to sit idle, which disrupts the functionality of the service. The Court agrees that Plaintiff has failed to establish the first two elements of her Rehabilitation Act claim. Therefore, summary judgment is appropriate as to Plaintiff's disability discrimination claim.

Accordingly,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket No. 18) shall be, and it is hereby, GRANTED. Plaintiff's Complaint is hereby dismissed with prejudice.

IT IS SO ORDERED THIS 2nd day of January, 2008.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE